Good morning. We have seven cases to be argued this morning. One has been submitted on the briefs. Because of the length of the sitting, we're inclined to take a mid-morning break, possibly after the Panakowski case. So those of you that are associated with Herrera or Ford, we probably won't be getting to those cases until 11 o'clock or so. This Court recently decided Balanchuk v. Mukasey, which we submitted last week by a Rule 28J letter. That case denied 245i eligibility to an alien who was not able to establish his 245i eligibility by his United States citizen wife when the petition had actually been received by the service after the April 30, 2001 deadline. This case got me to thinking of exactly what Congress intended to be required in order for a petition filed to the Immigration Service  or was needed to qualify for the Section 245i requirement. And I submit what that case really stands for is the proposition that what is required for 245i eligibility is really very different and much less than what is required for approval of an underlying petition or labor application. Where in 245i is it required that a filing fee be paid or even tendered to qualify for its benefits? The answer is it's not. It's not in the statute. If you read the statute, there is no such requirement. It just says that the application has to be filed. But, Counselor, there are a whole series of regulations that deal specifically with what happens when the wrong amount is sent in or there is no check at all sent in. Don't we have to pay attention to those? Well, there are two ways to look at that, Your Honor. The regulations do permit one to submit a defective check, and there's a procedure that the regulations require that the check has to be submitted to the bank. The bank gets a chance to honor it. If it dishonors it, the petitioner or applicant gets a chance to cure it by submitting the proper fee. Well, are you arguing then that the service should have sent the unsigned check in? That's what the regulation says, yes. The regulation says that the bank gets the first crack at it. And I'll note before the immigration judge below and before the service below, we gave examples of checks that this office had submitted for various immigration benefits that have the same defect. What specific regulation says that the agency has to send an unsigned check in, deposit an unsigned check? Well, we maintain that under the regulation that speaks to checks in general, there's no restriction that says it doesn't apply to unsigned checks. Well, I thought a moment ago you said the regulation required them to deposit an unsigned check. Did I misunderstand your statement? No. I'm saying that the regulation does not limit its reach to other than unsigned checks. The regulation does speak to checks with the wrong fee, but it does not speak to them. Well, what do you do with 7 Romanet 2, nonpayment? If a check or other financial instrument used to pay a filing fee is subsequently returned as nonpayable, that's one example. The emitter shall be notified and requested to pay the filing fee within 14 days. Are you relying on that provision? Well, again, that certainly gives a chance to cure it. What the service should have done is submitted the check, and as I said we gave various examples of other cases where we gave the checks, and the checks actually went through the bank, so the banks do honor it. In our briefing we gave examples of rules of other agencies, both in federal and state law in various administrative areas where unsigned checks were routinely accepted and put through the banking system because this is a recognition that in the reality of modern day banking, unsigned checks are negotiated. In any case, we maintain that the service regulations and policy memoranda greatly liberalized the filing requirements under 245I. They permitted approvable when filed applications or permissions, which are defined to include those which were never perfected. All right, well let's go back to HCF 4103.2A7 Romanet 1, which is the provision just before the one I read to you. What troubles me is the last sentence in that provision. It says an application or petition which is not properly signed or is submitted with the wrong filing fee shall be rejected as improperly filed. It's the application, Your Honor, not the check. Okay. And you're interpreting wrong fee to mean wrong amount. Correct, because there's a difference between submitting a check that has The right fee that isn't signed. The right fee not signed with a fee that is in the wrong amount that will never qualify, no matter how many times it's put through the bank. Now, I was going to go on and address the fact that under the services regulations and under the statute, you don't even necessarily need fees in order to qualify for 245I. The Labor Department regulations don't require fees with any of its filings. The Immigration Services regulations permit filing with a fee waiver, which later on can be approved, as well as these regulations that permit the filing with defective checks and the cure procedure. So the 245I requirement just says the application has to be filed, has to be submitted by the deadline. The Ball and Chip case referred to the language of submitting the application by the deadline as being the operative requirement and made a distinction in that case between hard requirements and soft requirements. The hard requirement, that case said, is the actual receipt of the application. The soft requirements we maintain in this case are everything else that it takes to make that petition approvable is not necessary in order to preserve the 245I filing date. The statute of repose, which the Ball and Chip case held 245I to be, only requires the receipt of the actual application by the filing date. Everything else can be kept. Well, what about the last sentence of 7A2, which says, legal and statutory deadlines will not be deemed to have been met if payment is not made within 10 business days after notification by the Department of, in this case, the dishonored check. Again, once that check has been returned and given the opportunity to cure by the applicant or petitioner. All right, you're down to about two minutes. Do you want to reserve? I'd like to reserve. You may do so. We'll hear from the government. May it please the Court. Thank you. My name is Lauren Fassette, and I represent the respondent, the United States Attorney General. I want to say to you, and I said to other counsel, you really have to speak up. Yes, Your Honor. And I'm not going to say it twice, because if you don't get the message, you don't get it. But at least for this judge, if you're going to communicate with me, you've got to keep your voice into the microphone. Keep it up. Yes, Your Honor. I don't want to keep badgering you. Okay. But if you're going to mumble, you're not communicating. The only issue in this case is whether the agency properly decided that the petitioner, Mr. Blanco, was not eligible for adjustment of status under 245i. And the answer is yes. He was not eligible for 245i because he did not properly file his application by April 30, 2001, the sunset deadline for 245i relief. Now, he submitted the application and all the associated materials by the deadline, and they were, in fact, received by the deadline. So the narrow question really is whether the submission of a check in the correct amount, but that is not signed by the lawyer whose law firm is the account holder, is legally insufficient under your regulations. Yes, Your Honor, and it is. For an application to be properly. Let me ask you some specific questions about that. The application or petition itself was signed, correct? Yes. And there was an affidavit that was correctly signed, right? I believe so. And the amount of the filing fee was correct? Yes, Your Honor. Okay. So where in the regulation does it say that a check that is unsigned automatically requires rejection of the entire application? Well, at ACFR 103.2a7i, it says, an application or petition shall be regarded as properly filed if it is signed and executed and the required filing fee is attached. The required filing fee, an unsigned check. Was $110 or whatever that amount was. And isn't it true that banks have the option to honor a check that is not signed? This is a regular account. This is a lawyer's account. It's not somebody they don't know. They could honor that check, couldn't they? They could, but the regulations nowhere require the agency to submit an unsigned check that's clearly not payable on its face to the bank. Those parts of the regulation that talk about a check that's returned later as nonpayable refer to checks that are signed and perhaps bounce or whatever. What does it say then? I know that's your interpretation, but I don't see in the regulation where it actually says that in so many words. Well, the more important point is that it doesn't say that the agency is required to submit the checks to the bank. The agency made the determination here that the unsigned check was not payable on its face and rejected the application. And unfortunately for the petitioner, thus he had lost the opportunity for 245I because the sunset date passed. And as this court held in the case the petitioner referenced, Ball and Shook, 245I is a statute of repose. And that case dealt with it. But in that case, the materials were not initially received before the deadline ever, correct? Correct. I mean, it was unclear what happened with it. A big package of stuff came in the day before the deadline. But it didn't come with the filing fee. Yes, the check was made out in the right amount, but an unsigned check is potentially no money at all. It's mere speculation that the bank would accept it. Why potentially no money? Why isn't the petitioner's argument the most reasonable if not the only way to read these regulations together? Otherwise, why is there this provision for dishonor? I mean, I suppose it could be that there's not enough money in the account, but it can also cover other situations besides that, including this one. But all this requires speculation, and the agency is not required anywhere in the statute to submit the check and let the bank make this determination. The agency made the determination here that the filing fee was not. Either way, you're making the bank's determination. Either way, whether you say, well, no bank I know is going to accept an unsigned check, that's for the bank. Just as you don't know if someone has enough money in their account, that's also for the bank. You don't call up and find out if they have enough money in the account. Yes, Your Honor. But here, regardless of whether the bank would have accepted the check or not, the agency determined that the proper filing fee was not submitted because they saw an unsigned check and determined it was not payable on its face. And the agency is in charge of interpreting and enforcing their regulations. The problem is they don't have a regulation to deal with the case of the unsigned check. They have regulations to deal with a check in the wrong amount. They seem to have regulations for dealing with checks that bounce. Is there any parallel kind of provision in any other statute or any other set of regs involving another agency or elsewhere within the DOJ that deals with the receipt of an unsigned check? Not that I recall right now. Basically, the agency, in interpreting their own regulations, should be given substantial deference, and here they decided that the unsigned check was not the proper filing fee and they rejected the application. Was there anything on the face of this filing which suggested that there were games being played here or suggests that the department shouldn't give the applicant the benefit of the doubt and treat this at least as favorably as it would for a bounce check? Well, again, this would require the agency to speculate, and that's not... No, it wouldn't. It would require the agency to send the check to the bank and then wait. And if it goes through, terrific, all is well. If it doesn't, they have the 14 days or 10 days and an extra fee to pay. Well, I'd like to make two points. First of all, again, I know I'm repeating myself, but there is no requirement that they submit the check. So if that's what the agency decided in interpreting their regulations and their procedures, that's what happened here. But moreover, even looking at ACFR 103.2A72i, even if the 14-day extension is sent and the money is received, it still doesn't say that the petitioner would benefit from that original filing date. It simply means that the application would be accepted at that point if the fee issue is resolved within 14 days. Here we have the statute of repose. There was a strict deadline of April 30th, 2001, and the petitioner's application was sent at the last minute and received on the 29th. And unfortunately, it did not have the proper filing fee in the agency's interpretation, and it was rejected. It had the wrong fee. There's a reg that deals with that. And what you do is you give them the notice and the 10 days and all the rest of it, and they can be protected. But you're standing on a rather strange ceremony here that because the fee is correct but the check is not signed, somehow or other this person is totally lost. Well, Your Honor, there are two issues. One would be the wrong fee, and the other one is a check that, for whatever reason, is found not payable at the bank. So it could have been the correct fee, but it bounces. What's your legal authority for the idea that an unsigned check is, as a matter of law, nonpayable? Because that seems to be what the letter informing them said, and that's what the decision said. What's the legal authority for that? The agency, in its discretion – I know that's what the agency said. What's its legal authority that tells us that, as a matter of law, an unsigned check is always nonpayable? I don't know that there is anything that says that specifically. If there isn't, then why isn't that an arbitrary decision? Because the agency determined that – I mean, if the check looked like it would be accepted by the bank and then something happens with the bank and they decide that it's nonpayable or it bounces, there are provisions. But the agency determined not to submit a check that – if it's an unsigned check, usually that would not be any fee at all. Essentially, it was sent with no fee because it was an unsigned check, and that's what the agency determined. And they should be given substantial deference in interpreting their own regulations. Here we have an unfortunate case, but the statute had a strict deadline, and as the court found in Bollenshoek, when someone doesn't meet the strict deadline of 245I, and because it is a statute of repose, they're ineligible for 245I. All right, Counselor, we understand your argument on that. Suppose everything were quite regular, check was signed, it went through. What would the result be? I'm sorry, Your Honor? Suppose everything were done properly. In other words, the check was signed, got there on time, met the statute of repose. What result? In this case, if the check had been signed with the proper fee all before April 30, 2001, presumably he would have been eligible for 245I relief. But unfortunately, that's just not the case here. A check was sent that was not signed. We understand your argument. We've heard it quite clearly. But for the signature, this person would have been eligible for relief. Is that correct? Potentially. I mean, the agency would have determined that, but it looks like that would be the case. But that's the same as but for sending the correct fee, but for a day before the deadline. Unfortunately, but fors are not going to help here. He didn't, unfortunately, send the application with the proper fee, which is required by the regulation to be properly filed by the deadline for 245I relief. This does not mean. Thank you, counsel. Your time has expired. Ms. Feiglin, may I make one comment? Yes. You know, you've done the best you can with a difficult case. I suppose it was just a sign to you. Yes, Your Honor. And you do agree it's unfortunate. But, you know, we're dealing with people's lives, and you keep falling back on where you can find a regulation. At some point, common sense has to enter into any agency's deliberations. I would hope you would bring that message back to the people you're working for. Yes, Your Honor. Thank you, counsel. Mr. Markham, you have some reserve time. Morshak, excuse me. I would only just like to emphasize one point. The government. A little louder, please, Mr. Morshak. Actually, the government kept making the point here that the service had discretion whether or not to run that check through the bank. This really underscores the point of the Ballam Shook case, that, again, there's the fixed hard deadline and there are these soft deadlines that maybe there is discretion, but the point is that that's a moving target, and that's precisely the point here. This was a case in which there was an opportunity for the service to present that check to the bank, and if the bank dishonored it for the petitioner to be able to cure the situation by signing the check, which, in fact, is what happened. Counsel, have you done any research, and this would be totally out of immigration law, but in UCC or some statute that deals with checks and banks, is there anything out there that would suggest that an unsigned check could be paid by a bank if it were presented? I looked for anything in the UCC that would say an unsigned check couldn't and didn't find anything. What I did find was, and I cited in my briefs to the Board of Immigration Appeals and repeated it here, there was an IRS policy memo that said that their policy is to accept unsigned checks and put them through the bank. There was another state of California... Do you have a cite to that? It's in my brief. Oh, it's in the brief. And another one mentioned a state of California agency that does the same thing. So it is common practice for agencies to routinely accept unsigned checks and put them through. In fact, as we've been talking about, the regulation allows that here, and it should have been done. Thank you. Thank you. Thank you, Counsel. The case just argued will be submitted for decision.
judges: Noonan, O'scannlain, Graber